### ESTATE OF P. D. BECKWITH, Inc., v. MINNESOTA STOVE CO.

(Circuit Court of Appeals, Eighth Circuit. February 17, 1920.)

No. 5242.

Patents ⚙═328—Improvement in stoves held not to disclose invention, and not infringed.

The Beckwith patent, No. 931,374, for improvements in base-burner heating stoves, the only novelty claimed for which was extending the combustion flue from the base upward between the ash pit and the exterior of the stove, and the location of the air inlet in the combustion flue, *held* not to disclose invention, and not infringed.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit by the Estate of P. D. Beckwith, Incorporated, a Michigan corporation, against the Minnesota Stove Company, a Minnesota corporation, for infringement of a patent. Decree for defendant, and complainant appeals. Affirmed.

Fred L. Chappell, of Kalamazoo, Mich. (Harry C. Howard, of Kalamazoo, Mich., on the brief), for appellant.

Walter H. Chamberlin, of Chicago, Ill. (William F. Freudenreich, of Chicago, Ill.; on the brief), for appellee.

Before HOOK, Circuit Judge, and AMIDON and BOOTH, District Judges.

HOOK, Circuit Judge. This is a suit by the Estate of P. D. Beckwith, Incorporated, against the Minnesota Stove Company for the infringement of patent No. 931,374 to Beckwith, August 17, 1909, for improvements in base-burner heating stoves. The trial court held that the structure shown in the patent lacked patentable novelty; also that defendant had not infringed. The bill was dismissed, and plaintiff appealed.

The District Court for the Northern District of Ohio previously sustained the patent in a brief opinion, and held that a stove structurally like that of the defendant here infringed. Beckwith v. Riley, 220 Fed. 173.

There were two important objects in the art to which the patent in suit belongs: First, the extraction of all the heat practicable from the smoke and other products of combustion before their escape from the stove into the outlet or chimney; second, the circulation of the air and the equalization of the heat in the room or apartment to be heated. For the first of these it had long been customary to provide for the heated gases a more extended flue or passageway within the stove structure and contiguous to its external walls, thereby subjecting them to a greater radiating surface than if conducted from the combustion space or chamber above the fire pot directly to their final outlet. This was done by closing their direct escape, and, by a continuous flue arrangement, conducting them downward at the back of the stove to the base, thence forward longitudinally to the front, thence back to the rear, and up to the smoke outlet.

There were two well-known types of stoves embodying this method, commonly termed two-flue and three-flue structures. In a two-flue structure a vertical or down-draft flue, leading from the combustion chamber downward to the base, was arranged in one of the rear corners of the stove. Thence it ran along one side of the stove to the front, returned to the rear along the other side, and then up to a connection with the smoke outlet in the back. In a three-flue structure there was a down-draft or vertical flue in each rear corner, each having its forward longitudinal extension along its appropriate side of the stove base, both meeting in front and merging in a single and larger flue leading to the rear and thence up to the outlet. The Beckwith structure and that of defendant are of this type.

For the circulation of the air and the equalizing of the heat in the room it was old to provide the stove with an air-circulating flue opening into the room at both ends, so arranged as to receive at its lower or intake end the cooler air nearer the floor and after its passage over surfaces within the stove which were more or less heated to dis-

charge it above, generally at or near the top of the stove. This device also aided materially in securing the first of the objects mentioned; that is to say, the extraction of the heat units from the products of combustion before their final escape into the smoke outlet or chimney.

The numerous patents, trade circulars, illustrations, and physical exhibits of the prior art produced at the hearing showed that the field was crowded when Beckwith came in 1909, and had been so for years. Some early aspects of it appear in Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241, decided in 1873, and since that time it has been developed by patented and unpatented devices until it would seem difficult to attribute invention to a new rearrangement of the combustion and air-circulation flues in a base-burner stove. The patent in suit contains three claims. The elements in the combination, otherwise manifestly old, for which novelty is asserted consist of an upward enlargement of the longitudinal part of the combustion flues along the sides of the stove base, so as to take in the space between the ash pit and the exterior wall of the stove, and next of the particular placement of the lower or intake end of the air circulation flue at the back of the stove. The first of these elements appears in claims 1 and 2, and the second in all three claims. But the first was also old in the general combination. See patent No. 129,348 to Keep, July 16, 1872, according to which several thousand stoves were made and marketed years ago. Moreover a specific claim by Beckwith for a combination including this element, but not that of his air-circulation flue, was finally rejected by the Patent Office. And when the enlargement is regarded in combination with his air-circulation flue it is clear that there is no coaction or co-operation between them in the sense of the patent law. Each one does its work without operative aid from the other.

The second element is said to be a novel arrangement of an air circulation flue, in that its lower or intake end is in the back wall of the stove at a point where it passes through the smoke outlet. It thence runs to the top of the stove as was common in older structures. Since the intake end as shown in the patent is some distance above the bottom of the stove, it is further from the cooler air at the floor than in other structures, and the length of the flue itself is also shortened. These would seem to lessen the effectiveness of the flue for air circulation and also for equalizing the heat in the room. But it is claimed that, the intake being through the smoke outlet, the air from the room freshly introduced into the flue at that point operates most effectively to extract the remaining heat in the outgoing products of combustion just before their escape into the chimney. We think this difference from the prior art was shown to be without substantial merit. A catalogue of the Peninsular Stove Company, 1891–92, with illustrations, featured the arrangement of its air-circulation flue. It entered through the bottom of the stove a little back of the center, and its upward course was not unlike that of Beckwith in the particulars with which we are now concerned. These stoves were on the market before 1890. The illustrated catalogue of the Detroit Stove Works,

1903–04, shows a structure much like the preceding one, except that the intake end of the air-circulation flue in the bottom extended to the rear edge of the stove. These were made as early as 1900.

Patent No. 849,872 to Weldon, April 9, 1907, shows two air-circulation flue systems. The first enters the base of the stove in front, runs back between the ash pit and the combustion flues, and thence upward and out at the top of the stove. Except for its entrance in front and passage to the rear, it would be a literal anticipation of Beckwith. The other is more properly a pair of flues, one on each side of the stove, with intake in the bottom extending to near the rear edge, and outlet in the stove back just below the smoke outlet. Other references to the prior art may be omitted. We do not think that the patent in suit discloses invention, as distinguished from mere mechanical change in the flues of old stoves. Indeed, in its practice the plaintiff, with its Beckwith patent, has brought the intake end of its air-circulation flue down from the smoke outlet to the lower edge of the back of the stove, where it is but a few inches around the corner from those in the bottom of older structures.

In defendant's structure the intake end of its air circulation flue is in the bottom of the stove and extends to the lower rear edge as in stoves older than Beckwith's. Even were the Beckwith device patentably new, it is plain that defendant does not infringe. The intake of Beckwith upon which so much stress is placed is according to the patent up at the smoke outlet, and according to practice down at the lower edge of the base. If by a sort of creeping mechanical equivalence plaintiff can move its intake around the corner to the bottom of the stove, no reason is perceived why it might not also move it along to the front of the base, as in Weldon, and so practically monopolize the intake ends of air-circulation flues. Obviously the equivalence asserted against defendant is not admissible.

The decree is affirmed.